Case number 20-3557. Susan Beiersdorfer et al v. Frank LaRose et al. Four arguments not to exceed 15 minutes per side. Mr. Terry J. Lodge for the appellants. You may proceed, Mr. Lodge. Mr. Lodge?  Yeah. Pardon me, Your Honor. May it please the court, my name is Terry Lodge. I am counsel for Susan Beiersdorfer and the other 11 appellants who were the plaintiffs in the district court proceeding below. This appeal is about whether the First Amendment through the 14th Amendment and separation of powers considerations could block substantive pre-enactment review ballot initiatives in the who saw themselves as disenfranchised by representative government began to advocate for the use of initiated ballot measures as an alternative means of making law. They wanted to take back control of government for ordinary citizens from the hands of the elites and improve government by making it more responsive to the will of the people and less corrupt. During the Ohio Constitutional Convention 1912, voters, the delegates there approved changes which they submitted to a statewide ballot to the Constitution of Ohio, which added initiative and referendum as forms of direct democracy. Delegates gave the General Assembly the power to enact legislation to facilitate... Counsel, I agree with you. There's a long history in Ohio of citizen initiative and referendum being on the ballot. And that's true in a lot of states as well. I guess the question is why can't the state put reasonable limits on the processing of those initiative and referendum efforts? States may control or regulate the process. They cannot, however, your honor, control or regulate the content of the speech that is implicated in initiatives. The problem with the Ohio scheme is that in a very dramatic change after a century of over two dozen state Supreme Court decisions that's that repeatedly held and consistently held without exception, that you may not in that election officials may not question the substance of an initiative proposed after more than 100 years. What room is there for your arguments today in light of our Schmidt decision? A great deal, your honor. The Schmidt decision focused well solely on whether or not there was adequate judicial review pre-enactment. And this deals with the fact that that elections officials, the Secretary of State and the Ohio Supreme Court, they have constitutional authority to rule matters off the ballot under the guise of simply reviewing initiatives to see that they conform with pertinent Ohio Constitution or statutory sections. But all of that is reviewable, right? Pardon me? But that's all reviewable by the Supreme Court. Well, it's your honor, it is reviewable, but only in the sense of mandamus. And the problem with the mandamus approach or the mandamus remedy is that it is a very troubling remedy. In 2015, in fact, the Ohio Supreme Court noted in an initiative case that the Secretary of State, if the Secretary of State disqualifies ballot initiatives before they're submitted to the electorate based on its legal opinion of their constitutionality, then challenges would then come before this court mandamus. And the question would be whether the Secretary abused his discretion. Abuse of discretion is more than an error of law or that rejected in Schmidt. I mean, hasn't that already been decided? Well, the problem is, your honor, is that it is not an adequate remedy. It is possible for the Ohio Supreme Court to have an opinion that a proposed measure would be constitutional, but would have to uphold in mandamus, a case where an election official or a board of elections ruled something, and they're highly subjective and possibly very uneducated opinion. I guess what we're getting at is the import of that argument is that Schmidt was wrongly decided, right? No. No. How does that argument, wasn't that argument made in Schmidt or am I wrong? That argument was not made in Schmidt, your honor. In fact, I found in a footnote or a comment within the Schmidt decision that the Sixth Circuit noted that the district court actually was only looking at due process kinds of interests. The Schmidt case basically is one wherein the court decided, it didn't, the court was not asked to uphold the validity of the Secretary of State's veto power or a board of elections veto power over the measures. The Schmidt case basically upheld the state's power to pose regulations on how a measure, an initiative measure is put on the ballot. But we're talking, and the Schmidt case did not go into this whole issue of whether or not the substance of the measure itself can be brought into question and the measure can be vetoed simply because of reference to its content. But isn't that, I'm sorry, isn't that what happened in Schmidt? The decision was made that it was administrative and not legislative and it was rejected on that basis, right? It was that the, yes, your honor, that that's a correct statement, but it was that the measures which were decriminalization of marijuana possession and usage were actually administrative because they were ordering municipal officials or village officials to not enforce state criminal laws, other criminal laws. The, so the problem is that those were administrative measures which are not allowed to be the subject of initiative as opposed to this case where we are arguing and believe very firmly that the state may not administer its elections in such a way as to produce an executive branch veto power, the executive branch being the secretary of state and through the 88 county boards of elections. As I say, the problem that has been generated by House Bill 463 is that the Ohio Supreme Court does not have a direct review authority because the courts only act after enactment. The courts only act upon something that has been legislated. The people are co-equal with the General Assembly in terms of their power under the Ohio Constitution to propose initiatives. So suppose a group wants to amend a city charter, county charter, to say that only white men in the county can own land. You're saying that there's a, that those individuals have a 14th, First Amendment or 14th Amendment right to have that initiative placed on the ballot if they've otherwise required, comply with all their criteria and there's no ability for state officials to say, wait, that's violently unconstitutional and we're not going to place on the ballot for that reason. My short answer is yes, Your Honor, but I would point out that in the ensuing dialogue of the election, and this is when these matters are, of course, to be discussed, it would be certainly appropriate and desirable for public officials to sound off in opposition, something like that. But more than that, Your Honor, if the matter were enacted, the courts exist for a reason. The courts are there as the regulatory function. So what, I mean, with the 14th Amendment, what's the substantive due process right at stake here that's been violated by the officials' actions if they don't put that ballot initiative on the ballot? Well, first of all, Your Honor, the substantive due process is violated when appointed and not necessarily legally trained elections officials can act on their own subjective perception as to whether something is unconstitutional and make a ruling that is more, more binding in effect than the Ohio Supreme Court. And the, what is occurring is that the speech that is prohibited is the initiative measure which may be severable. It may not all, you don't necessarily have to throw out the entire baby and bathwater combination. And again, severability is a, is an obligatory stage. Sure, I'm not, I'm not here to throw out anything. I'm not sure, I'm not sure, I'm not sure the severability, you just lost me, I'm sorry, you just lost me there. Well, what I'm saying is that the judicial responsibilities post-election are, judges act, of course, upon destitutable live controversy. Judges could take a, you're saying there could be something constitutional in that ballot initiative and the judges later on could say, well, we'll uphold the constitutional part, but strike down the unconstitutional. Correct, yes, yes. But couldn't, can't the state officials also do that or couldn't the petitioners then just submit a ballot initiative that has only the constitutional parts and taking out the wildly unconstitutional parts? I guess I'm just really struggling to see what the basis of your constitutional claim is. We held in the earlier case that these restrictions really don't act as a prior restraint on speech. Well, under the, yes, sir. I was going to say, made of whether speech is really even a play here in the context of just trying to get an initiative on the ballot as opposed to actually voting for a candidate. Besides first amendment considerations of association and expression and whatnot, we're also talking about separation of powers problem. What the general assembly did when it enacted House Bill 463 in 2016, in essentially in secret in the lame duck session of the legislature was that it transferred power away from the judiciary to the executive branch, giving, elevating the executive branch role to more than simply making sure there were enough signatures that the forms were filled out correctly and that the matter could be certified to the ballot. It actually gave local elections officials who were unaccountable and not elected the power to strike things from the ballot based on their subjective perception of whether or not it would be lawful in the past. Is this an argument? I'm sorry, I just want to quit. Is this an argument based on state law or due process? It's based upon separation of powers considerations under the federal constitution, as well as first amendment violations. I'm sorry, does the federal constitution separation of powers apply to state government? Yes, it does. It does in the sense that, of course, separation of powers considerations are recognized within the federal government, but also they are recognizable through, I believe the decision was a Kilbourne case. It was cited in the Earth Law Foundation brief, 1880 decision, but essentially, yes, the state, the imbalance of established state constitutional power within Ohio has been severely disrupted by the General Assembly, reassigning, redistributing what has constitutionally been a balanced workable system. So you're saying, counsel, I want to understand this. You're saying that if this case were before the Ohio Supreme Court and the Ohio Supreme Court said, this is fine, that there would be a federal constitutional question for review by the United States Supreme Court on that decision that this doesn't violate separation of powers under Ohio law? No, I believe that there would still be a separation of powers, and I might add- For federal, for the federal courts? Yes, yes, and I would add- All right, if this is getting away from Judge White's question, your time's been up for a little while, and if it's getting away from that, I think we don't need to go there, but if it's a direct part of her answer, that's fine. No, no, I, thank you, Your Honor. You're welcome. All right, Mr., anything further? Mr. Blakely? Good afternoon, Your Honors, may it please the court. The district court correctly dismissed this case for two reasons. First, the contested statutes do not violate the federal constitution, and second, the state law claim is barred by sovereign immunity. I think it's clear that Schmidt governs this case, and so my friend raised a few arguments to try to distinguish this case from Schmidt, and it's to those arguments I'll first respond. First, my friend says that the boards of election are, they don't have the authority to screen out these ballot initiatives, but as the district court held, that claim is a state law claim barred by sovereign immunity. The plaintiffs alleged the boards of election are violating the Ohio constitution by enforcing the state statutes. In other words, they're asking the federal court to enjoin state officials from violating state law, and under Pennhurst, that claim is barred by sovereign immunity. In terms of whether there's a federal separation of powers issue that can be applied at the state level, I think the answer is no, Judge White, and I can't point to any case contradicting that position. Separation of powers works at the horizontal level at the federal government, and it works the vertical level between national government and the states. It doesn't go one step down to then the separation of powers of the local governments, and so to that claim, the plaintiff's arguments fail. My friend also suggests that this case is different from Schmidt because they're challenging the content-based review of what the boards of election are doing, and this court in Schmidt actually addressed this issue in footnote three, and I think that's the footnote my friend was referring to. The court said even if the plaintiffs wanted to make a content-based argument, that would fail for a few reasons. First, the screening process is not content-based on its face because the screening process applies to every initiative regardless of the subject matter or viewpoint. Plus, it's not content-based implicitly because you can justify the screening process without reference to the subject matter of any initiative. For example, the screening process advances the state's interest in avoiding overcrowded ballots and preserving voter confidence. Lastly, the government doesn't exclude proposed initiatives because it No, it excludes initiatives that are procedurally flawed, and so this court in Schmidt held it's not content-based, therefore it's not subject to strict scrutiny. So all we have left is Schmidt, and this court has already held the statutes, one, do not constitute a prior restraint, and two, they pass muster under Anderson verdict. So that really just leaves the 14th amendment and 9th amendment claims left, but as the district court correctly pointed out, the plaintiffs have failed to identify a fundamental right that is deeply rooted in our nation's history. For those reasons, counsel, let's just go back to the speech claim. It may or may not, it may be barred entirely. I suppose one difference is maybe there's some difference in this case with respect to the specific initiatives that were put forward and the types of issues that were prohibited from being on the ballot. But in my hypothetical, where a city comes forward with a group comes forward and wants to put an initiative on the ballot that only white men can own land in the city, does that get rejected by the board of elections? So one thing's important here, and the Ohio Supreme Court's made this clear. What the boards of election are doing is they're not assessing the constitutionality of proposed initiatives. What they're doing is they're assessing does the proposed initiative, does it fall within the initiative power, the legislative power? So for example, is it administrative? Is it legislative? If it's administrative, then it's excluded because it doesn't fall within the legislative power. If it's legislative though, then the boards of election should not entertain whether it's constitutional, whether it violates the 14th amendment, the 12th amendment, you know, it shouldn't be entertaining those questions. It's truly a procedural component. But there still is quite a bit of power, it seems to me, in the hands of these local election officials in the sense that making a decision between what's administrative and what's legislative might be an especially bright line. I'm not sure what test you want to give us for what's administrative versus legislative, but that's going to put a lot in the hands of people who aren't judges and who probably aren't lawyers. Nothing wrong with that, but these are pretty technical distinctions they have to make. So what's the test they apply here? How can we be certain that they're not taking this? Well, what's important to remember here is that there is a review after the boards of election determination. As this court held in Schmidt, it's essentially de novo review, and it can occur on an expedited basis. So that's the answer. That's how you safeguard against that discretion. But more importantly, your answer is that the board of elections can butcher this entirely and make content-based decisions under the guise of administrative versus legislative, but the state courts will clean it up later. That's the way the General Assembly enacted it. Yes, that's what they envisioned. But I want to address one point clearly. The plaintiffs here are not challenging the legislative-administrative distinction, and here's why. Let's suppose for a second that the plaintiffs prevail in this case, and the court nullifies the statutes as unconstitutional. That legislative-administrative distinction still stands because it derives not from the state statutes but from the Ohio Constitution, specifically Article 2, Section 1F and Article 10, Section 3. So they're not challenging this legislative-administrative distinction. They're specifically challenging the screening process, and as Schmidt held, that process does not constitute a severe burden. It's supported by significant state interests, and when we balance it, it may not be the most narrowly tailored provision, but because it's not a severe burden, it doesn't need to be narrowly tailored. It just needs to be reasonable given the significant state interests, and Schmidt completely forecloses that claim here. So then all we have left are the Ninth and Fourteenth Amendment claims, but as the district court held, the plaintiffs failed to identify that fundamental right that's rooted in this nation's history. So unless the court has any further questions, I'll just briefly conclude this. Every issue in this — because these cases have to come up in a mandamus posture, the standard review is fairly unfriendly to challengers. I think there's a concurrent — maybe it's a concurring opinion by Justice Fischer saying, if I'm remembering correctly, that maybe the standard review is closer to de novo, but can you address that? Sure. I would point the court to Schmidt, which held that although it is not technically de novo review, it is essentially de novo review because it undergoes the same process. That is, this court holds, and to the extent there is any disagreement as to what the Ohio Supreme Court would do, the proper action is to bring this claim in state court. That's really the fundamental problem with this case, is a lot of the issues probably should have been brought in state court because this court lacks jurisdiction to resolve the matters. So unless the court has any further questions, the district court identified the correct precedent, applied it correctly, and that's why the case is dismissed, and this court should affirm. Thank you. Counsel, I do have one other question. I'm sorry to take all your time. The Supreme Court recently issued a stay, or maybe it's like a year ago now, but in the little case of the Ninth Circuit, and I think on the Anderson-Burdick question, which I guess those two words haven't come up yet so far, but couldn't let this go, the Supreme Court at least said that there's a — seemed to recognize there's a pretty deep split over whether Anderson-Burdick should even So I'm not sure what our panel can do. Should our en banc court be giving attention to whether we should continue to apply Anderson-Burdick in this setting, considering that only one of their circuit does the same and most others don't, and the Supreme Court has at least suggested that may not be the right approach? Sure, Your Honor. I want to tread carefully here. For purposes of this proceeding, the state embraces Schmidt, and that precedent binds this court, and it results in an outcome favorable to the state. Now, the state did propose having an initial en banc hearing, and the court rejected that, reasonably so given all that's happened in the circuit the last week. Now, to the extent there's any appetite for an en banc proceeding after today's proceedings, the state is welcome to that proceeding, but for purposes of this case, Schmidt is binding and resolves the matter. And just to notify the circuit split, in favor of no First Amendment applicability, it's the D.C. Circuit, Tenth Circuit, Eighth, Seventh, and Second Circuit, and in favor of applying First Amendment Anderson-Burdick scrutiny, it's the Sixth Circuit, First Circuit — well, actually, they do something else — and also the Ninth Circuit. So that's the makeup of the split. It's sure to be resolved at some point in the Supreme Court, but until that day comes, Ohio would like to not have to litigate these if that is the correct outcome. So, I guess that's my answer to your question. Okay. All right. If there's nothing further, Mr. Lodge, you have your rebuttal. Yes, thank you. All of the initiatives I've been affiliated with and that the plaintiffs, the appellants, have attempted to put on the ballot are legislative, not administrative, and all of them were kept off the ballots. Keeping an initiative on the ballot is a severe burden on ballot access under the Ohio scheme. In Thompson v. DeWine, a 2020 decision, I believe, the Sixth Circuit said in the state order that at bottom, a severe burden excludes or virtually excludes electors or initiatives from the ballot. We believe that this is a severe burden and that even if only intermediate scrutiny is the standard that's applied, that 463 must be stricken. We did attempt to bring many of these issues in state court and the Ohio Supreme Court repeatedly ducked the matter of determining the constitutionality of House Bill 463. There's a justice on the Supreme Court, the Ohio Supreme Court, who at least on four different occasions in Mandamus' initiative cases that I have been associated with, has pled with his colleagues to make constitutional determinations about House Bill 463. Unlike Schmidt, this case challenges the very idea that the government can decide for the people which duly qualified initiatives appear on the ballot. The First Amendment protects political speech more than any other kind of speech, but when the government prevents a duly qualified initiative from appearing on the ballot, it ends the political discussion and violates the community's rights. This case is before the court on a motion to dismiss, not an injunction, a declaratory judgment ruling that pre-election judicial veto is unconstitutional, would go a long way to remedy the issue, and wouldn't require an injunction. It's the court's job here to decide what legislative actions are considered by a legislative body, whether it's a state general assembly or city council, the people by initiative. These are legislative decisions we're talking about and the court comes in after the election, once it is enacted, to say what the law is. The state legislature could propose and pass a bill that only white men can own property, and the courts would wait until that bill became law before ruling on its constitutional invalidity. The same rule should apply, and indeed under the Ohio Constitution, must apply to initiatives as the people's reserved legislative power. Looking at a proposed law is necessarily content-based, it isn't merely procedural, it isn't merely an act of restriction by a board of elections to throw something off the ballot after thousands of hours of volunteer time pounding the pavement have put it before the board. Trying to call a constitutional review procedural is a slate of hands. The boards of form and signatures are proper, that the petitions don't have invalid signatures, but the state and county boards of elections are trying to say that the text of the proposed law is part of the initiative petition form. They're trying to make procedural that which is substantive. Allowing the state to decide which initiatives go into the ballot and which ones don't completely uproots the purpose of the initiative. It lets the fox guard the hen house, the people get to decide for themselves which initiatives go under the ballot. They created that procedure primarily through signature gathering, and the initiative power is dead if the government gets to decide before the vote whether an initiative can even be subjected. Council, what is your best case that this is a federal constitutional issue? I think the best case is that the first amendment governs the communicative aspects of the speech here, that this is not merely procedural. I think that Judge White was asking you for a particular case, if I understood her question correctly. No. Yes, thank you. I'm sorry. There are a couple that I have. One is taxpayers united for assessment cuts, the sixth circuit decision that holds that although the constitution doesn't state create an initiative procedure, if it creates it, the state can't place restrictions on its use and violate the federal constitution. The other is Rosen v. Brown, which is a 1992 sixth circuit decision, which essentially upholds the same principle that if there is an initiative process, it is governed by the federal and state constitutions regarding freedom of speech and with the provisions assuring equal protection of the laws. I would point out that the Rosen case was one where, and it is still good law in the sixth circuit and possibly beyond, but in the Rosen case, the plaintiff, he wanted to have the word independent added to his name as a candidate on an electoral ballot. The sixth circuit found that that one word was a very substantial act of protected free speech. If a single word carries that kind of import and constitutional protection, certainly a complicated, oftentimes well-conceived initiative, even if parts of it is something that is protected by the first amendment also. All right. Thank you. Thank you both for your argument and we'll consider the matter carefully.